**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **LESLIE ROBINSON** | ) |
| | ) |
| **Plaintiff(s),** | ) |
| | ) |
| **v.** | ) |
| | )    **2:06-CV-1085-WKW** |
| **BOB RILEY, ET AL.** | ) |
| | ) |
| **Defendant(s).** | ) |
| | ) |
| | ) |

**<u>SPECIAL REPORT</u>**

COME NOW the Defendants, **Bob Riley, et al.**, by and through undersigned counsel, and in accordance with this Honorable Court's December 7, 2006 and January 10, 2007 Orders, offer the following answer and written report.

**<u>PARTIES</u>**

1.  The Plaintiff, Leslie Robinson, is an inmate of the Alabama Prison System incarcerated at Easterling Correctional Facility, 200 Wallace Drive, Clio, Alabama 36017.

2.  Defendant Bob Riley is Governor of the State of Alabama.

3.  Defendant Richard Allen is employed as Commissioner for the Alabama Department of Corrections.

4.  Defendant Paul Whaley is employed as a Classification Specialist with the Alabama Department of Corrections.

5.  Defendant Bobby Lingo is employed as a Correctional Officer I, by the Alabama Department of Corrections, Easterling Correctional Facility.

6.  Defendant Sandra Hayes is employed as a Classification Specialist, by the Alabama Department of Corrections, Easterling Correctional Facility.

7.  Defendant Nathanial Lawson is employed as a Correctional Officer Supervisor I, by the Alabama Department of Corrections, Easterling Correctional Facility.

8.  Defendant Brian Mitchell is employed as a Psychological Associate II, by the Alabama Department of Corrections, Easterling Correctional Facility.

9.  Defendant Gwendolyn Mosely is employed as a Warden III, by the Alabama Department of Corrections, Easterling Correctional Facility.

## **EXHIBITS**

EXHIBIT A -  Affidavit of Nathaniel Lawson (with attached exhibits: Behavior Citation & Incident Report).

EXHIBIT B -  Affidavit of Bobby Lingo (with attached exhibit: Behavior Citation).

EXHIBIT C -  Affidavit of Sandra Hayes.

EXHIBIT D -  Affidavit of Brian Mitchell (with attached exhibits: Treatment Termination & Progress Review Form).

EXHIBIT E -  Affidavit of Gwendolyn Mosley (with attached exhibits: Administrative Regulation #64 – Possession of Contraband; Administrative Regulation #414 – Behavior Citation Procedures for Informal Disciplinary Actions; Administrative Regulation #403, Disciplinary Hearing Procedures, & Annual Water Quality Report from the City of Clio, Alabama).

## PLAINTIFF'S CLAIMS

The Plaintiff inmate claims that his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution are being violated by the Defendants acting in concert and acting in deliberate indifference because: 1) Easterling Correctional Facility is overcrowded; 2) Easterling Correctional Facility is not secure; and 3) Easterling Correctional Facility poses a health hazard.

The Plaintiff inmate alleges that the Defendants acted in concert taking away the Plaintiff inmate's right to work release and parole and punitively segregating the Plaintiff inmate without affording the Plaintiff inmate meaningful due process.

The Plaintiff inmate alleges that the water at Easterling Correctional Facility is contaminated contrary to state and federal law and thus creating an imminent danger to the Plaintiff inmate and other inmates.

## DEFENDANTS' ANSWER AND RESPONSE

1.     The Defendants deny that they violated the Plaintiff's constitutional rights.

2.     The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.     The Plaintiff inmate has failed to state a claim upon which relief may be granted.

4.     The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.     The Defendants are immune from suit due to qualified immunity.

6.     The Plaintiff inmate makes no allegation as to a specific deprivation or a specific harm.

7.    The theory of respondeat superior is unavailable to the Plaintiff inmate in a §
1983 action.

## STATEMENT OF FACTS

The Plaintiff inmate is incarcerated at Easterling Correctional Facility in Clio,
Alabama.

On March 24, 2006, Defendant Lingo was conducting a search of the Plaintiff
inmate's assigned living area, and found and confiscated one slick pick ticket (used for
gambling on sports games).  (Exhibits A, B and E)  The Random Shakedown Report was
turned into a supervisor, and served as the Incident Report.   (Exhibits A, B and E)
Defendant Lingo initiated a Behavior Citation against the Plaintiff inmate for violation of
Administrative Rule #64 – Possession of Contraband.   (Exhibits A, B and E)   The
incident was investigated by Defendant Lawson, who recommended that the Plaintiff
inmate receive loss of telephone, canteen and visiting privileges for a period of 45 days,
and assignment to the Restricted Privilege Dorm.  The Plaintiff inmate was charged with
a violation under Administrative Rule #414 – Behavior Citation Procedures for Informal
Disciplinary Actions.[1]  (Exhibits A, B and E)

On July 24, 2006 Defendant Mitchell attended the Progress Review for the
Plaintiff inmate. (Exhibit D)   Defendant Mitchell signed the Progress Review in
agreement with the Classification recommendation.  (Exhibit D)  Defendant Mitchell

---

[1]  Administrative Regulation #414 also supports the use of Behavior Citations to adjudicate a rule violation
listed under Administrative Regulation #403, provided it meets the criteria established in Administrative
Regulation #403.

does not control security or determine the inmate population.  (Exhibit D)  Defendant Mitchell does not control inmate transfers.  (Exhibit D)

The Defendants deny violating the constitutional rights of the Plaintiff inmate. (Exhibits A, B, C, D and E)

Easterling Correctional Facility received an Annual Water Quality Report from the City of Clio, Alabama.  (Exhibit E)

## ARGUMENT

### 1.    The Plaintiff's allegations do not establish any unconstitutional conditions that need to be remedied.

The Plaintiff inmate's claim of cruel and unusual punishment is without merit. The Plaintiff inmate's removal from the Crime Bill Substance Abuse Program at Easterling Correctional Facility was a direct result of his willful violation of prison rules. (Exhibits A, B and E)  The Eleventh Circuit has held that conditions of confinement violate the Eighth Amendment only if the conditions rise to the level of "serious" deprivation and result from an official's deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999).  Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994); Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981).

The disciplinary actions taken against the Plaintiff in no way constitute, or rise anywhere close to the level of, cruel and unusual punishment.  The Plaintiff suffers no serious depravation and has made no showing of deliberate indifference on the part of any official.  (*See Complaint*)  He simply received standard punishment for a violation of established prison regulations.  (Exhibits A, B and E)

A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety. <u>Farmer</u>, 511 U.S. at 834, 114 S.Ct. at 1977 (*citing* <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-303, 111 S.Ct. 2321, 2324-27 (1991)).

The Supreme Court has held that deliberate indifference describes a state of mind more blameworthy than negligence. <u>Farmer</u>, 511 U.S. at 835, 114 S.Ct. at 1978.

> [A] prison official cannot be found liable under the Eighth Amendment. . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 835, 114 S.Ct. at 1978.

The Plaintiff inmate alleges that he was deprived of due process and was punitively segregated due to "arresting officer [D]efendant Bobby Lingo['s] [b]are-[b]one[s] allegation . . . without any Admin. Reg. 403 hearing or a meaningful 601 investigation." (*See Complaint*).   The Plaintiff inmate was placed into the HOT Dorm, not segregation.[2] (Exhibits A, B and E)   Under Rule 403, a major violation may be adjudicated with a behavioral citation in accordance with Administrative Regulation 414 provided: 1) there is no injury to staff as a result of the violation; 2) no consequences arise which result in the loss or destruction of property and security of the institution; 3) there is no serious injury to inmates as a result of the incident; 4) the violator is not likely to receive disciplinary segregation; 5) with written justification, the warden or a designee determines that a behavioral citation is appropriate.  (Exhibit E; *see Administrative Rule 403*)  The Plaintiff inmate did not receive disciplinary segregation.  (Exhibits A, B and E)

---

[2] The inmate population apparently refers to the HOT dorm as segregation, which is incorrect.

The Administrative procedures were followed.  (Exhibits A, B and E)  The Plaintiff inmate has failed to allege a single specific incident that shows a deliberate indifference by the Defendants.

The Plaintiff inmate's bare allegations concerning unclean water, overcrowding, security issues, and health issues are wholly without merit.  The City of Clio reports that the water is not unclean.  (Exhibit E; *See Annual Water Quality Report*)  In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and unusual punishment, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).  The Plaintiff inmate's bare allegations of overcrowding, security issues, and health issues are devoid of any specific "objectively serious need" or "objectively insufficient response" by the Defendants to that need.  (*See Amended Complaint*).  The Eighth Amendment "does not mandate comfortable prisons," Rhodes, 452 U.S. at 349, 1015 S.Ct. at 2400.  In fact, the Eighth Amendment permits prison conditions that are "restrictive and even harsh," Farmer 511 U.S. at 833, 114 S.Ct. 1977 (*quoting* Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399)  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (excessive force against prisoner may be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (*quoting* Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399)(double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's

necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson, 503 U.S. at 9, 112 S.Ct. 1000 (*quoting* Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399).    The Plaintiff has failed to show an "objective" violation of the Eighth Amendment.

In Bennett v. Misner, 2004 W.L. 2091473 (D. Or.) the U.S. District Court of Oregon was weighing allegations that injured or sick workers, some of whom bled into the food, was such that kitchen conditions were so unsanitary that they posed a substantial risk of harm.  The District Court held:

> Liability under section 1983 arises only upon a showing of personal participation by the defendant in the alleged constitutional deprivation. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989); Arnold v. Int'l Business Machines, Corp., 637 F.2d 1350, 1355 (9th Cir.1981).  In addition, plaintiffs have neither alleged nor provided evidence to establish that they suffered significant injury or illness—such as specific, repeated instances of food poisoning or malnutrition—directly resulting from their exposure to unsafe or unsanitary kitchen conditions.  *See* Hudson v. McMillian, 503 U.S. 1, 8-10 (1992) )(to state an Eighth Amendment conditions-of-confinement claim, the harm suffered from the alleged violation must be more than *de minimus*).
>
> Second, plaintiffs have failed to show that the specific lapse in sanitation resulting from Bennett's cut was anything other than temporary or that any harmful contamination occurred.  Therefore, plaintiffs did not suffer a deprivation of constitutional magnitude.  2004 W.L. 2091473* 11 (D Or)

In the instant of case, the Plaintiff inmate's general allegation as to health issues is wholly void of any specific claim of harm and is insufficient to rise to the level of a constitutional violation.  Although several conditions of confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 304, 11 S.Ct. 2321, 2327 (1991).  "Nothing so amorphous as 'overall conditions' can rise to the level

of cruel and unusual punishment when no specific deprivation of a single human need exists." <u>Wilson</u> 501 U.S. at 305, 111 S.Ct. at 2327.  The Plaintiff inmate makes no allegation as to a specific deprivation.

The Plaintiff inmate names Defendant Mitchell and Defendant Hayes in his Complaint without mentioning any specific allegation of their participation. (*See Complaint*)  Defendant Mitchell does not control security or determine the inmate population. (Exhibit D)  Defendant Mitchell does not control inmate transfers.  (Exhibit D)  Defendant Hayes has no knowledge of the health hazards of Easterling Correctional Facility, nor does she have any knowledge of the Plaintiff inmate's removal from Crime Bill SAP.  (Exhibit C)

Presumably, Plaintiff inmate's claim against Defendants Riley, Allen, Mosely, Lawson and Whaley appears to be an attempt to hold them responsible through the concept of respondeat superior.  Respondent superior is not available to a plaintiff under § 1983.  *See* <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978).  "Supervisor liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." <u>Braddy v. Florida Dep't of Labor & Employment Sec.</u>, 133 F.3d 797, 802 (11th Cir. 1998)(*quoting* <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).  The Plaintiff inmate has made no specific allegations as to how the Defendants participated in any improper conduct.

2.    **The Defendants are immune from suit.**

This case should also be dismissed because the Defendants are immune from suit. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment therefore not only bars suits against a state by citizens of another state, but also bars suits against a state by that state's own citizenry. *See* Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974). The Defendants are officials acting on behalf of the State of Alabama. The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State; thus, the Defendants should be dismissed based on immunity.

In addition, the Defendants are protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) (*quoting* Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)).

The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Wilson, 163 F.3d at 1295, *quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979). The Defendants have not violated Robinson's clearly established rights; thus, they are entitled to qualified immunity.

## <u>CONCLUSION</u>

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.

WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING (KIN047)
Attorney General


 CHEAIRS M. PORTER                
Cheairs M. Porter (015)
Assistant Attorney General
Counsel for Defendants


ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 26th day of February, 2007, served a copy of the foregoing upon the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Leslie Robinson, #147096
Easterling Correctional Facility
200 Wallace Drive
Clio, AL  36017

 CHEAIRS M. PORTER
OF COUNSEL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE ROBINSON, #147096          )
    Plaintiff,                 )
                              )
VS.                               )
                              )      CASE NO. 2:06-CV-1085-WKW
                              )
BOB RILEY, et.al.                 )
    Defendant (s)               )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Nathaniel Lawson, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Nathaniel Lawson, and I am presently employed as Correctional Officer Supervisor I, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 24, 2006, Officer Bobby Lingo reported to me, Lt. Nathaniel Lawson that he had found and confiscated one slick pick ticket (used for gambling on sports games) from Inmate Leslie Robinson B/147096, during a random search of Inmate Robinson's assigned living area. Inmates are not allowed to gamble at Easterling Correctional Facility. I questioned Inmate Robinson about the slick pick ticket. Inmate Robinson did not deny ownership of the ticket. I had Inmate Robinson placed in Dorm #6A (Restrictive Privilege Dorm). Inmate Robinson received a Behavior Citation for rule violation #64-Possession of Contraband (Exhibit #1). Inmate Robinson's name and the contraband in his possession was listed on the Twenty-four (24) hour Random Shakedown Report and turned into Captain Jeffery Knox on March 27, 2006, therefore no incident report was needed (Exhibit #2). I have never nor do I have any intentions of harassing Inmate Robinson.

I have not violated Inmate Robinson's constitutional rights.

*Nathl Lawson* COSI
NATHANIEL LAWSON



PENGAD 800-631-6989

EXHIBIT

A

Affidavit – Nathaniel Lawson
Civil Action – 2:06-CV-1085-WKW
Page 2


SWORN TO AND SUBSCRIBED TO before me this the _13th_ day of
_December_____ , 2006.

_Grace M. Maby_
NOTARY PUBLIC

My Commission Expires: _03|31|07.___

EXHIBIT 1

ENTERED MAR 3 0 2006

# ALABAMA DEPARTMENT OF CORRECTIONS
## MAJOR INSTITUTIONS - BEHAVIOR CITATION

INMATE ___Leslie Robinson___ AIS# ___B/147096___ CELL/DORM/BED# ___10B68___

FACILITY ___Easterling  C. F.___ JOB ASGMT: ___Kitchen 2___ CUSTODY: ___Medium___
The above named inmate is cited by ___Bobby Lingo, COI___ for the following
violation (s) of institutional / departmental rule (s)  is described:  R/V #64-Possession of contraband.  You,
Inmate Leslie Robinson, B/147096, did have in your possession one (1) slick pick ticket, which was found and
confiscated by Officer Bobby Lingo during a routine shakedown of your assigned living area.

Date of infraction: ___3/24/2006___ Time of Infraction: ___6:35 A.M.___
Location of Infraction: ___Dormitory #10B, Bed #68___

___Bobby Lingo, COI___                    _Bobby Lingo_  _3-24-06_
                                          Citing Employee's Signature/Date

*******************************************************************************

I have investigated the circumstances surrounding this citation and recommend that the following
sanction (s) be taken against this inmate:

( )   Counseling/Warning  ( X )  Loss of Telephone Privileges for ___45___ days
( X )  Loss of Canteen Privileges for ___45___ days    ( )   Removal from Incentive Program
( X )  Loss of Visiting Privileges for ___45___ days    ( )   Removal from Hobby Crafts Prg.
( )   Extra Duty for ___ days at ___ hours per day under supervision of ___ Shift
( )   Removal from good time earning status           ( X )  ___45___ days assigned to Hot Dorm
( )   Referral to Classification for custody review

_Refused To Sign/ Bobby Lingo COI_  _3-24-06_   _Nickel Lewis  C0 II_  _3/24/06_
Inmate's Signature/AIS Date                     Shift Supervisor's Signature/Title/Date

*******************************************************************************

After having reviewed this citation and the recommended sanction (s) presented, the
following action is approved:

( ✓ )   Citation and sanctions are approved
( )    Citation and sanctions are approved as modified below:

( )    Citations and sanctions are disapproved and formal disciplinary action is to be
       immediately initiated under the provisions of ADOC AR 403.
( )    Citations and sanctions are disapproved.  Expunge action from inmate's file.
_3-27-06_                              _K Longmire  COII  3-27-06_
Effective Date of Sanctions            Warden/Designee's Signature/Date

*******************************************************************************

Inmate's receipt of completed action:  _Refused to Sign/ Guilmet with  COII_
                                        Inmate's Signature/AIS/Date  _3-27-06_

Serving Officer's Initials: _AW_

*******************************************************************************

Distribution:   ( ) Captain    ( ) Shift Cmdr ___ Shift ( ) Business Office ( ) ICS
(As Required)   ( ) Psychologist ( )  Classification ( ) Central Records  ( ) File

Annex A to AR 414



STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: 3/24/06 | 3. Time: 6:00 A.M. | 4. Incident Number: ECR-06-362 | Class Code: C |
|---|---|---|---|---|

| 4. Location Where Incident Reported: **Shift Commander's Office** | 6. Type of Incident: **24 Hour Random Shakedowns** |
|---|---|

| 7. Time Incident Reported: **8:00 A.M. on 3/27/06** | 8. Who Received Report: **Jeffery Knox, COSII** by Kenneth Stony COSII |
|---|---|

**9. Victims:**          Name                              AIS

a. __N/A_____ No. __N/A_____

b. _____ No. _____

c. _____ No. _____

| 10. Suspects:     Name                AIS | 11. Witnesses:     Name                AIS |
|---|---|
| a. Leslie Robinson        No. B/147096 | a. N/A             No. _____ |
| b. _____      No. _____ | b. _____      No. _____ |
| c. _____      No. _____ | c. _____      No. _____ |
| d. _____      No. _____ | d. _____      No. _____ |
| e. _____      No. _____ | e. _____      No. _____ |
|  | f. _____      No. _____ |
|  | g. _____      No. _____ |

**PHYSICAL EVIDENCE:**

12. Type of Evidence:

__N/A_____

_____

_____

13. Description of Evidence:

__N/A_____

_____

_____

14. Chain of Evidence:

a. __N/A_____

b. _____

c. _____

d. _____

e. _____

15. Narrative Summary:

| **Inmate** | **AIS #** | **Bed #** | **Contraband** | **Officers** |
|---|---|---|---|---|
| Jason Partin | W/179096 | 6A6 | None | Reeves |
| Richard Moore | B/164474 | 6A14 | Outdated magazine | " |
| Leon Williams | B/240028 | 6A68 | None | " |
| Robert Baldwin | W/157475 | 6A70 | " | " |
| Adam Bennett | W/200359 | 6A60 | " | " |
| Ricky Tyson | W/174539 | 6B6 | " | A. Williams |
| Carl Allen | W/127268 | 6B14 | " | " |
| Elisha Morris | B/144431 | 6B68 | Two (2) plastic bags | " |
| Patrick Upshaw | B/219654 | 6B70 | None | " |
| Robert Griggs | B/205939 | 6B78 | " | " |



Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
               COPY to Institutional File                                    COPY to Central Records Office

**Annex C to AR 302 – June 1, 2005**



STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | | Incident Number: | ECF-05- | Class Code: **C** |
|---|---|---|---|---|
| Date:  3/24/06 | | Type of Incident:  24 Random Shakedowns | | |

Narrative Summary (Continued) Page No.: 2

| Inmate | AIS# | Bed# | **Contraband** | **Officer(s)** |
|---|---|---|---|---|
| David Brasher | W/234596 | 7A6 | None | Baldwin |
| Graylan Buchanan | B/218353 | 7A13 | " | " |
| Tony Hill | B/124627 | 7A78 | None | " |
| Michael Bullard | W/236198 | 7B7 | Brown bag | " |
| Levi Maddox | B/215324 | 7B15 | Outdated magazine | " |
| Calvin Brooks | B/137190 | 7B78 | None | " |
| Tony Murray | B/129256 | 8A14 | " | Brown |
| Lewis Snipes | B/168156 | 8A68 | " | " |
| Alfred Reed | B/136750 | 8A70 | " | " |
| Rick Evans | W/161117 | 8B6 | " | " |
| William Duncan | B/128700 | 8B14 | " | " |
| Willie McCaulley | B/237527 | 8B78 | " | " |
| Donald Shepherd | B/167248 | 9A14 | " | Porter |
| Sammy Moultrie | B/150840 | 9A78 | " | " |
| Richard Lenning | W/209696 | 9A68 | " | " |
| Ricky Shackleford | W/170273 | 9A70 | " | " |
| George Reed | W/123606 | 9A6 | " | " |
| Thomas Dees | W/139307 | 9B6 | " | Boatwright |
| Charles Anderson | B/240312 | 9B14 | " | " |
| Jose Herrera | W/237282 | 9B70 | " | " |
| Authur Turner | B/215861 | 9B79 | " | " |
| Oscar Summerhill | B/107100 | 10A6 | " | Lingo |
| Atibia McNair | B/219830 | 10A15 | " | " |
| James Pounders | W/135843 | 10A14 | " | " |
| Quinton McGruder | B/142257 | 10A70 | " | " |
| Samuel Johnson | B/136658 | 10A78 | " | " |
| Charlie Byrd | B/159008 | 10B14 | " | " |
| Stephen Morgan | W/136096 | 10B6 | " | " |
| Leslie Robinson | B/147096 | 10B68 | One (1) slick pick ticket | " |
| Quincy Tisdale | B/242517 | 10B70 | None | " |
| Thomas Williams | B/152451 | 10B78 | " | " |
| 10B Common Area: | | | Alcohol pad-Back TV area | |
| Montago Morris | B/183952 | 5A21 | None | Portwood/Fayson |
| Roy Gipson | B/240452 | 5A21 | " | " |
| Cleveland Thomas | B/142356 | 5A17 | " | " |
| David Allen | B/150171 | 5A17 | " | " |
| Lawrence Billingsley | B/152608 | 5A11 | " | |

All contraband was properly disposed of according to Administrative Regulation #306. Inmate Leslie Robinson, B/147096, received a Behavior Citation for R/V #64-Possession of contraband. Inmate Robinson was placed in Dormitory #6A (Hot Dorm). Sgt. Lawson disposed of the slick pick ticket by tearing it up and throwing it in the trashcan.

Shift Commander

ADOC Form 302½B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
**INCIDENT REPORT/DUTY OFFICER REPORT**
**CONTINUATION**

| Institution: **Easterling Correctional Facility** | | | Incident Number: **ECF-05-** | Class Code: **C** |
| --- | --- | --- | --- | --- |

| Date: 3/24/06 | | | Type of Incident: **24 Random Shakedowns** | |
| --- | --- | --- | --- | --- |

Narrative Summary (Continued) Page No.: 2

| Inmate | AIS# | Bed# | Contraband | Officer(s) |
| --- | --- | --- | --- | --- |
| David Brasher | W/234596 | 7A6 | None | Baldwin |
| Graylan Buchanan | B/218353 | 7A13 | " | " |
| Tony Hill | B/124627 | 7A78 | None | " |
| Michael Bullard | W/236198 | 7B7 | Brown bag | " |
| Levi Maddox | B/215324 | 7B15 | Outdated magazine | " |
| Calvin Brooks | B/137190 | 7B78 | None | " |
| Tony Murray | B/129256 | 8A14 | " | Brown |
| Lewis Snipes | B/168156 | 8A68 | " | " |
| Alfred Reed | B/136750 | 8A70 | " | " |
| Rick Evans | W/161117 | 8B6 | " | " |
| William Duncan | B/128700 | 8B14 | " | " |
| Willie McCaulley | B/237527 | 8B78 | " | " |
| Donald Shepherd | B/167248 | 9A14 | " | Porter |
| Sammy Moultrie | B/150840 | 9A78 | " | " |
| Richard Lenning | W/209696 | 9A68 | " | " |
| Ricky Shackleford | W/170273 | 9A70 | " | " |
| George Reed | W/123606 | 9A6 | " | " |
| Thomas Dees | W/139307 | 9B6 | " | Boatwright |
| Charles Anderson | B/240312 | 9B14 | " | " |
| Jose Herrera | W/237282 | 9B70 | " | " |
| Authur Turner | B/215861 | 9B79 | " | " |
| Oscar Summerhill | B/107100 | 10A6 | " | Lingo |
| Atibia McNair | B/219830 | 10A15 | " | " |
| James Pounders | W/135843 | 10A14 | " | " |
| Quinton McGruder | B/142257 | 10A70 | " | " |
| Samuel Johnson | B/136658 | 10A78 | " | " |
| Charlie Byrd | B/159008 | 10B14 | " | " |
| Stephen Morgan | W/136096 | 10B6 | " | " |
| Leslie Robinson | B/147096 | 10B68 | One (1) slick pick ticket | " |
| Quincy Tisdale | B/242517 | 10B70 | None | " |
| Thomas Williams | B/152451 | 10B78 | " | " |
| 10B Common Area: | | | Alcohol pad-Back TV area | " |
| Montago Morris | B/183952 | 5A21 | None | Portwood/Fayson |
| Roy Gipson | B/240452 | 5A21 | " | " |
| Cleveland Thomas | B/142356 | 5A17 | " | " |
| David Allen | B/150171 | 5A17 | " | " |
| Lawrence Billingsley | B/152608 | 5A11 | " | " |

All contraband was properly disposed of according to Administrative Regulation #306. Inmate Leslie Robinson, B/147096, received a Behavior Citation for R/V #64-Possession of contraband. Inmate Robinson was placed in Dormitory #6A (Hot Dorm). Sgt. Lawson disposed of the slick pick ticket by tearing it up and throwing it in the trashcan.

_(signature)_

Shift Commander

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|

| Date: 3-24-06 | Type of Incident: **24 Random Shakedowns** |
|---|---|

Narrative Summary (Continued) Page No.: 4

| **Inmate** | **AIS#** | **Bed#** | **Contraband** | **Officer(s)** |
|---|---|---|---|---|
| Johnny Wilson | W/141569 | 6A-38 | None | McCovery |
| Charles Cooper | B/198851 | 6A-62 | " | " |
| Richard Moore | James Sharit | 6A-11 | 1-extra roll of tissue | " |
| Arron Appleton | B/210189 | 6A-27 | " | " |
| Douglas Campbell | B/181758 | 6B-85 | None | Whitehead |
| Willie Mitchell | B/197300 | 6B-81 | " | " |
| Thomas Blakeney | W/241732 | 6B-126 | " | " |
| Tony Ross | B/171563 | 6B-121 | " | " |
| Charles Richards | W/222019 | 6B-01 | " | " |
| Clay Hodge | W/198570 | 7A-11 | A broken rubber band | H. Baker |
| Douglas Gray | B/241046 | 7A-131 | None | " |
| Darrell Byod | B/192928 | 7A-40 | " | " |
| Demarlos Davis | B/201115 | 7A-65 | " | " |
| Joe Kennamer | W/238440 | 7A-84 | " | " |
| James Owoses | B/186002 | 7B-23 | None | Gosha |
| Anquinton Stovall | B/210738 | 7B-35 | " | " |
| Thomas Costa | W/181320 | 7B-60 | " | " |
| Raymond Thilbault | W/173979 | 7B-82 | " | " |
| Edward Smith | B/110071 | 7B-98 | " | " |
| William Lucy | B/197593 | 8A-21 | None | Wells |
| Douglas Mims | B/169194 | 8A-13 | " | " |
| Kassey Reedy | B/176451 | 8B-01 | None | " |
| George Gunn | W/179953 | 8B-19 | " | " |
| Wendall Graves | W/199058 | 8B-48 | " | " |
| Mark Lingenfelter | W/216060 | 8B-89 | " | " |
| George Reed | W/123606 | 9A-06 | None | G. Jones |
| Edlar Riggins | B/223367 | 9A-07 | " | " |
| Otis Bennett | B/110664 | 9A-104 | " | " |
| Kevin Campbell | W/195487 | 9B-62 | None | G. Jones |
| Ole Poellintz | B/160003 | 9B-114 | " | " |
| Joesph Elkins | W/192457 | 10A-112 | trash | Brunson |
| Anthony Brown | B/164260 | 10A-90 | " | " |
| Rodney Lindly | W/231770 | 10B-58 | " | " |
| Gregory Burton | B/179331 | 10B-31 | " | " |
| Gregory Boykins | B/107120 | 5B-23 | None | Davis |
| Lawrence Billingsley | B/152608 | 5B-23 | " | " |
| Jessie Morris | W/172711 | 5B-03 | None | " |
| Larry Holcomb | B/125662 | 5B-22 | " | " |
| Terry Johnson | B/209427 | 5B-26 | " | " |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|

| Date: 3-24--06 | Type of Incident: **24 Random Shakedowns** |
|---|---|

Narrative Summary (Continued) Page No.: 5

| **Inmate** | **AIS#** | **Bed#** | **Contraband** | **Officer(s)** |
|---|---|---|---|---|

All contraband was disposed of properly in accordance with Administrative Regulation #306.

Shift Commander/ *Sgt. Richard Hagu*

**ADOC Form 302-B – June 1, 2005**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|

| Date: 3-24--06 | Type of Incident: **24 Random Shakedowns** |
|---|---|

Narrative Summary (Continued) Page No.: 5

| <u>Inmate</u> | <u>AIS#</u> | <u>Bed#</u> | <u>Contraband</u> | <u>Officer(s)</u> |
|---|---|---|---|---|

All contraband was disposed of properly in accordance with Administrative Regulation #306.

Shift Commander/ *Sgt. Richard Dague*

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|

| Date: **03-24-06** | Type of Incident: **24 Hour Random Shakedowns** |
|---|---|

Narrative Summary (Continued) Page No.: **6**

| Inmate | AIS# | Bed# | Contraband | Officer(s) |
|---|---|---|---|---|
| Joel Basenburg | W/231292 | 5A-18 | none | Riley/K. Richardson |
| Courtney Boyd | B/208421 | 5A-10 | " | " |
| Charleston Crawford | B/195532 | 5A-10 | " | " |
| Derrick Shields | B/196467 | 5A-12 | " | " |
| Kenneth Lasley | B/218802 | 5A-12 | " | " |
| Tremaine Royal | B/217879 | 6A-33 | none | Gurman |
| Alvin Murray | B/152484 | 6A-42 | " | " |
| Joseph Shmburger | B/131846 | 6A-52 | " | " |
| Charles Cooper | B/198851 | 6A-62 | " | " |
| Robert Baldwin | W/157475 | 6A-70 | " | " |
| Common Area | | -----------Tattoo Gun Motor | | Gurman |
| Vincent Martin | B/162756 | 6B-73 | " | O. Scott |
| Demetrius Culver | B/171277 | 6B-63 | " | " |
| Kenneth Bedgood | B/198897 | 6B-53 | " | " |
| James Bigham | W/141661 | 6B-43 | " | " |
| Kenneth Reese | B/208614 | 6B-33 | " | " |
| Carrol Pristell | W/145957 | 7A-33 | " | Spann |
| Travis McKnight | B/229114 | 7A-43 | " | " |
| Allen Monroe | B/175618 | 7A-53 | " | " |
| Cedric Sankey | B/211441 | 7A-63 | " | " |
| Tony Vincent | B/127333 | 7A-70 | " | " |
| Scott Stanley | W/202157 | 7B-05 | " | Phifer |
| David Garrett | W/218030 | 7B-21 | " | " |
| Kinny Tubbs | B/169233 | 7B-33 | " | " |
| Calvin Woods | B/198476 | 7B-53 | " | " |
| John House | B/206544 | 7B-63 | " | " |
| Antonio Hudson | B/139294 | 8A-33 | " | Cameron |
| Clarence Price | W/158158 | 8A-63 | " | " |
| Alfred Reed | B/136750 | 8A-70 | " | " |
| Billy Biles | W/188576 | 8B-43 | " | " |
| Thomas Thompson | W/199558 | 8B-63 | " | " |
| Reginald Coleman | B/219664 | 9A-113 | " | Giles |
| James Tyree | B/212900 | 9A-27 | " | " |
| James Harrison | B/161154 | 9A-43 | " | " |
| Peter Wynn | B/137001 | 9A-53 | " | " |
| Ricky Shackleford | W/170273 | 9A-70 | " | " |
| Samuel Brown | B/210083 | 9B-23 | " | G. Jones |
| Michael Willis | B/219611 | 9B-43 | " | " |
| Dewey Troupe | W/185202 | 9B-53 | " | " |
| Paul Palmer | W/108607 | 9B-63 | " | " |
| Joe Herrera | W/237282 | 9B-70 | " | " |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|
| Date: **03-24-06** | Type of Incident: **24 Random Shakedowns** | |

Narrative Summary (Continued) Page No.: **7**

| Inmate | AIS# | Bed# | Contraband | Officer(s) |
|---|---|---|---|---|
| Flando Cox | B/214645 | 10A-43 | none | Johnson |
| Charles Jackson | B/244167 | 10A-53 | " | " |
| Scottie Johnson | B/167190 | 10A-63 | old newspaper | " |
| Clyde Coleman | B/237543 | 10B-33 | none | " |
| Willie Hunter | B/134926 | 10B-43 | string | " |
| Michael Williams | B/154587 | 10B-53 | none | " |
| Ronald Smith | W/150132 | 10B-63 | " | " |

**All contraband was disposed of properly in accordance with Administrative Regulation #306.**
**The tattoo gun motor was placed in Captain Kenneth Sconyers' Office. No further action was**
**taken.**

*Marcia Sconyers, Ca.*
**SHIFT COMMANDER**

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: **Easterling Correctional Facility** | Incident Number: | Class Code: **C** |
|---|---|---|

| Date: **03-24-06** | Type of Incident: **24 Random Shakedowns** |
|---|---|

Narrative Summary (Continued) Page No.: **7**

| Inmate | AIS# | Bed# | Contraband | Officer(s) |
|---|---|---|---|---|
| Flando Cox | B/214645 | 10A-43 | none | Johnson |
| Charles Jackson | B/244167 | 10A-53 | " | " |
| Scottie Johnson | B/167190 | 10A-63 | old newspaper | " |
| Clyde Coleman | B/237543 | 10B-33 | none | " |
| Willie Hunter | B/134926 | 10B-43 | string | " |
| Michael Williams | B/154587 | 10B-53 | none | " |
| Ronald Smith | W/150132 | 10B-63 | " | " |

**All contraband was disposed of properly in accordance with Administrative Regulation #306.**
**The tattoo gun motor was placed in Captain Kenneth Sconyers´ Office. No further action was**
**taken.**

*Marcie Scott, Cole*
**SHIFT COMMANDER**

**ADOC Form 302-B – June 1, 2005**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE ROBINSON, #147096       )
     Plaintiff,              )
                            )
     VS.                    )
                            )      CASE NO. 2:06-CV-1085-WKW
                            )
BOB RILEY,GOVERNOR , et.al.      )
     Defendant (s)           )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Bobby Lingo</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Bobby Lingo,</u> and I am presently employed as <u>Correctional Officer I</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 24, 2006, I was conducting a search of Inmate Leslie Robinson's assigned living area. I found and confiscated one slick pick ticket (used for gambling on sports games). *I initiated a Behavior Citation against Inmate Robinson for violation of Rule #64-Possession of Contraband (Exhibit #1).*

Inmate Robinson was taken to the shift office where Sgt. Nathaniel Lawson questioned him about the contraband. Inmate Robinson was placed in the Restricted Privilege Dorm with loss of telephone, canteen, and visiting privileges for a period of 45 days.

I have not violated any of Inmate Robinson's Constitutional Rights.

_____ COI
BOBBY LINGO

SWORN TO AND SUBSCRIBED TO before me this the __29th__ day of
__December__, 2006.

_____
NOTARY PUBLIC

My Commission Expires: __03|31|08__

PENGAD 800-631-6989

EXHIBIT
**B**

ENTERED MAR 3 0 2006

# ALABAMA DEPARTMENT OF CORRECTIONS
# MAJOR INSTITUTIONS - BEHAVIOR CITATION

INMATE____Leslie Robinson____AIS#____B/147096____CELL/DORM/BED#____10B68

FACILITY____Easterling C. F.____JOB ASGMT:____Kitchen 2____CUSTODY:____Medium
The above named inmate is cited by _____Bobby Lingo, COI_____ for the following
violation (s) of institutional / departmental rule (s) is described: R/V #64-Possession of contraband. You,
Inmate Leslie Robinson, B/147096, did have in your possession one (1) slick pick ticket, which was found and
confiscated by Officer Bobby Lingo during a routine shakedown of your assigned living area.

Date of infraction:____3/24/2006____Time of Infraction:____6:35 A.M.
Location of Infraction:_____Dormitory #10B, Bed #68

Bobby Lingo, COI                                          _Bobby Lingo_  3-24-06
                                                         Citing Employee's Signature/Date

*************************************************************

I have investigated the circumstances surrounding this citation and recommend that the following
sanction (s) be taken against this inmate:

( )   Counseling/Warning  ( X )  Loss of Telephone Privileges for ____45____ days
( X ) Loss of Canteen Privileges for ____45____ days   ( )   Removal from Incentive Program
( X ) Loss of Visiting Privileges for ____45____ days   ( )   Removal from Hobby Crafts Prg.
( )   Extra Duty for _____ days at _____ hours per day under supervision of _____ Shift
( )   Removal from good time earning status            ( X )  45 days assigned to Hot Dorm
( )   Referral to Classification for custody review

_Refused To Sign/ Bobby Lingo col_       _Michel Lemon_ Co II 3/24/06
Inmate's Signature/AIS Date  3-24-06      Shift Supervisor's Signature/Title/Date

*************************************************************

After having reviewed this citation and the recommended sanction (s) presented, the
following action is approved:

( ✓ )   Citation and sanctions are approved
( )     Citation and sanctions are approved as modified below:

( )     Citations and sanctions are disapproved and formal disciplinary action is to be
        immediately initiated under the provisions of ADOC AR 403.
( )     Citations and sanctions are disapproved. Expunge action from inmate's file.

_3·27-06_                                _K. Jones_ CoII 3-27-06
Effective Date of Sanctions               Warden/Designee's Signature/Date

*************************************************************

Inmate's receipt of completed action:  _Refused to Sign/ Cuhet w/n_ CoII
                                        Inmate's Signature/AIS/Date  3-27-06

Serving Officer's Initials:  _AW_

*************************************************************

Distribution:    ( ) Captain   ( ) Shift Cmdr _____ Shift ( ) Business Office ( ) ICS
(As Required)    ( ) Psychologist ( ) Classification ( ) Central Records ( ) File

Annex A to AR 414



IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE ROBINSON, #147096    )
    Plaintiff,    )
        )
VS.    )
        )    CASE NO. 2:06-CV-1085-WKW
        )
BOB RILEY, GOVERNOR, et.al.    )
    Defendant (s)    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Sandra Hayes, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Sandra Hayes, and I am presently employed as Classification Specialist, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I, Sandra Hayes, Classification Specialist, have in no way violated any constitution rights of Inmate Leslie Robinson #147096. I have no knowledge of him being removed from Crime Bill SAP or any matters concerning parole. I have no knowledge on any matters concerning security or health hazards in reference to Inmate Robinson.

I have not violated any of Inmate Robinson's Constitutional Rights.

SANDRA HAYES

SWORN TO AND SUBSCRIBED TO before me this the 2 nd day of
January , 2007.

NOTARY PUBLIC
My Commission Expires: My Commission Expires Jan. 24, 2009

EXHIBIT
C

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE ROBINSON, #147096          )
    Plaintiff,                   )
                              )
    VS.                        )
                              )     CASE NO. 2:06-CV-1085-WKW
                              )
BOB RILEY, GOVERNOR, et.al.     )
    Defendant (s)            )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Brian Mitchell</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Brian Mitchell</u>, and I am presently employed as <u>Psychological Associate II</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 24, 2006, Inmate Leslie Robinson was removed from the Crime Bill Substance Abuse Program, at Easterling Correctional Facility. Inmate Robinson was removed by security for ADOC rule violation #64-Possession of Contraband, gambling paraphernalia. Inmate Robinson also received a Treatment Termination for this offense (Exhibit A).

On July 24, 2006, I attended the Progress Review for Inmate Robinson in my official capacity of Psychological Associate II for Easterling Correctional Facility. I signed the Progress Review in agreement with the Classification recommendation and I recommended the Crime Bill Substance Abuse Program (Exhibit B). I do not control or determine the inmate population. I do not control security. I deny depriving Inmate Robinson or any inmate of the Crime Bill Substance Abuse Program. I do not control inmate transfers and I deny depriving Inmate Robinson or any other inmate of Parole or Work Release.

I deny violating any constitutional rights of Inmate Robinson.

_Brian Mitchell_
BRIAN MITCHELL



Affidavit – Brian Mitchell
Civil Action – 2:06-CV-1085-WKW
Page 2

SWORN TO AND SUBSCRIBED TO before me this the ___2ᵘᵈ___ day of
___January___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

ENTERED MAR 2 7 2006     ANNEX B

# TERMINATION

Inmate _ROBINSON, LESLIE_ , AIS # _B/147096_ , is terminated from:

_____ PRE – TREATMENT

___✓___ CRIME BILL SUBSTANCE ABUSE PROGRAM

_____✓ Phase I

_____ Phase II

_____ Phase III

_____ CONTINUING CARE/AFTERCARE

on this the _24th_ day of _MARCH_ , 200 _6_ . Following the

Termination period, the inmate may be considered for re-entry into the Easterling

Correctional Facility Substance Abuse Program (SAP).

**COUNSELOR'S REASON FOR INMATE TERMINATION:** _RESIDENT_

_REMOVED FROM THE CRIME BILL SUBSTANCE_

_ABUSE, SIX MONTH PROGRAM BY THE E.C.F._

_SECURITY FOR RULE VIOLATION #64 POSSE-_

_SSION OF CONTRBAND (SCIP PICK TICKET)._

_RESIDENT SENT TO 6-A._

_M. W. Noz C._ 3/24/06     _Stephanie Scott_ 3/24/06

MR. MARK W. JANKOSKI                        WITNESS

DRUG TREATMENT COUNSELOR

cc: Dorm file
    Classification

**EXHIBIT B**

*No psy neds*
*No phys Limits*

ALABAMA DEPARTMENT OF CORRECTIONS – PROGRESS REVIEW FORM –    JULY    20, 2006
================================== (COU122) ==================================
AIS #: 00147096A    SSN: 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  RACE/SEX:  B/M  DATE OF BIRTH: 07/12/1962
NAME: ROBINSON, LESLIE BERNARD    CUSTODY:   MED9  SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT   TIME SRVD:  08Y07M22 LAST DISC: 03 27 2006
CRME: UNLAW BREAKING AND ENTERING VE MIN REL DT: 11/27/2017 ACTIVE DET:  0

DISC: POSSESSION OF CONTRABAND    PRL CONS:   07/01/2008 EDUCAT LEV: 09

WL/PGM: _____Kitchen_____    PRIM OCCUP:LABORER - GENERAL

RECOMMENDED INSTITUTION: Easterling_____    RECOMMENDED CUSTODY: Medium

JUSTIFICATION:  Annual Review. Property offender and repeat offender serving 20 years for

UBEV (car of items). Parole revoked due to TOP III X3 and RSP III. No new cases. Has PSI

on case. Prior 11/84 Auto Burg Grand Theft, 9/86 TOPII & RSP, and 11/92 Burg III. Alcohol,

marijuana, and cocaine abuser with SAP completion in 1999 during prior incarceration. Has

Crime Bill SAP needs. Rec'd 3/06 Cit for R/V #64. Has NA/AA attendance. Recommend no

change in custody. Was sent to Easterling for Crime Bill SAP, per initial progress review.

Remain at Easterling.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:  MIKE 7/20/06    APP. S/L: _____

_____ 7/24/06    _____ 7/24/06
CLASSIFICATION SPECIALIST/      DATE    WARDEN OR DESIGNEE    DATE

_____ 7-24-06    _____ 7/25/06
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.  DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

____ APPROVED ____ DENIED; DIVERTED TO: _____   REASONS: _____

_____
                                                  CRB MEMBER          DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____   REASONS: _____

_____
                                                  CRB MEMBER          DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____   REASONS: _____

              No Change  CRB MEMBER 7/05/06     DATE

FINAL DECISION: INST _____ CUSTODY _____ DATE _____

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: Leslie Robinson

LAST ACTION: ____ REL. ____ DNA: ____ SKILLS: ____

6/13/05 AARC @ East. rec East med    Skills: Cement Finisher    Pill Diabetic
10ed @ East 7/15/06    DL: Expired-AL
Religion: Baptist    DM 5/1/02 @ KCF

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LESLIE ROBINSON, #147096  )
  Plaintiff,     )
          )
VS.        )
          )  CASE NO. 2:06-CV-1085-WKW
          )
BOB RILEY, GOVERNOR, et.al. )
  Defendant (s)    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley, and I am presently employed as Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have not violated Inmate Leslie Robinson's #147096 constitutional rights. Easterling Correctional Facility was designed to house approximately 650 inmates (50 inmates in the segregation unit and 600 inmates in 5 population dormitories). At the present time, approximately 1267 inmates are assigned to this facility. All ADOC Facilities are over the required limit of inmates. I do not have control over the number of inmates entering this facility.

ADOC is understaffed with correctional officers, and Easterling is not fully staffed at the present time, but we have officers to work overtime to fill in the areas that are needed.

Inmate Robinson's allegation that he has been deprived of Crime Bill SAP and punitively segregated in Dorm 6A (Restricted Privilege Dorm) is untrue.

On March 24, 2006, Officer Bobby Lingo found and confiscated one slick pick ticket (used for gambling on sports games) from Inmate Robinson during a random search of Inmate Robinson's living area. Officer Lingo initiated a Behavior Citation against Inmate Robinson for violation of Rule #64- Possession of Contraband (Exhibit #1). The incident was investigated by Sgt. Nathaniel Lawson who



Affidavit – Gwendolyn Mosley
Civil Action – 2:06-CV-1085-WKW
Page 2

recommended that Inmate Robinson receive loss of telephone, canteen, and visiting privileges for a period

of 45 days and assignment to the Restricted Privilege Dorm. Inmate Robinson was charged with violation

under Administrative Regulation 414. Administrative Regulation #414 <u>Behavior Citation Procedures for</u>

<u>Informal Disciplinary Actions</u> (Exhibit #2) also supports the use of Behavior Citations to adjudicate a rule

violation listed under Admin. Reg. #403, provided it meets the criteria established in Admin. Reg. #403

(Exhibit #3).

Inmate Robinson was removed from Crime Bill SAP due to receiving a Behavior Citation.

Inmate Robinson's allegation that the drinking water at Easterling Correctional Facility is

contaminated is false. I have seen no evidence that the drinking water is contaminated. I drink the same

water and the staff drinks the same water. Our Facility received an Annual Water Quality Report from the

city of Clio, Alabama (Exhibit #4).

I deny violating any constitutional rights of Inmate Robinson.

GWENDOLYN MOSLEY

SWORN TO AND SUBSCRIBED TO before me this the 2ᵈ day of
January , 2007.

NOTARY PUBLIC

My Commission Expires: 7-15-07

ENTERED MAR 3 0 2006

# ALABAMA DEPARTMENT OF CORRECTIONS
## MAJOR INSTITUTIONS - BEHAVIOR CITATION

INMATE_____ Leslie Robinson ___ AIS#_____ B/147096 _____ CELL/DORM/BED#___ 10B68

FACILITY_____ Easterling C. F. ___ JOB ASGMT:_____ Kitchen 2 ____ CUSTODY:__ Medium
The above named inmate is cited by _____ Bobby Lingo, COI _____ for the following
violation (s) of institutional / departmental rule (s) is described:  R/V #64-Possession of contraband. You,
Inmate Leslie Robinson, B/147096, did have in your possession one (1) slick pick ticket, which was found and
confiscated by Officer Bobby Lingo during a routine shakedown of your assigned living area.

Date of infraction:_____ 3/24/2006 _____ Time of Infraction:_____ 6:35 A.M.
Location of Infraction:_____ Dormitory #10B, Bed #68

Bobby Lingo, COI _____ _Bobby Lingo_ _3-24-06_
_____ Citing Employee's Signature/Date
**********************************************************************************

I have investigated the circumstances surrounding this citation and recommend that the following
sanction (s) be taken against this inmate:

( ) Counseling/Warning ( X ) Loss of Telephone Privileges for ___ 45 ___ days
( X ) Loss of Canteen Privileges for ___ 45 ___ days ( ) Removal from Incentive Program
( X ) Loss of Visiting Privileges for ___ 45 ___ days ( ) Removal from Hobby Crafts Prg.
( ) Extra Duty for _____ days at _____ hours per day under supervision of _____ Shift
( ) Removal from good time earning status ( X ) 45 days assigned to Hot Dorm
( ) Referral to Classification for custody review

_Refused To Sign/ Bobby Lingo coi_     _Richard Lewis C-II 3/24/06_
Inmate's Signature/AIS Date  _3-24-06_     Shift Supervisor's Title/Date
**********************************************************************************

After having reviewed this citation and the recommended sanction (s) presented, the
following action is approved:

( ✓ ) Citation and sanctions are approved
( ) Citation and sanctions are approved as modified below:

( ) Citations and sanctions are disapproved and formal disciplinary action is to be
immediately initiated under the provisions of ADOC AR 403.
( ) Citations and sanctions are disapproved. Expunge action from inmate's file.
_3·27-06_     _K. Jones COII 3-27-06_
Effective Date of Sanctions     Warden/Designee's Signature/Date
**********************************************************************************
Inmate's receipt of completed action:  _Refused to Sign /Robert w/n CoII_
_____ Inmate's Signature/AIS/Date  _3-27-06_

Serving Officer's Initials:____ _AW_
**********************************************************************************

Distribution:   ( ) Captain   ( ) Shift Cmdr _____ Shift ( ) Business Office  ( ) ICS
(As Required)   ( ) Psychologist  ( )  Classification ( ) Central Records  ( ) File

Annex A to AR 414



EXHIBIT 2

RECEIVED
8 1996



**STATE OF ALABAMA**

# DEPARTMENT OF CORRECTIONS

FOB JAMES, JR.
GOVERNOR

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

JOE S. HOPPER
COMMISSIONER

October 3, 1996

ADMINISTRATIVE REGULATION                    OPR:  INSTITUTIONS
NUMBER           414

BEHAVIOR CITATION PROCEDURES
FOR INFORMAL DISCIPLINARY ACTIONS

I.    **GENERAL**

A.    This regulation establishes policies/procedures governing the conduct and disposition of Informal Disciplinary Actions for inmates in the custody/control of Alabama Department of Corrections. The Wardens, their designee(s) and other Department of Corrections (DOC) employees whose duties involve the citing or processing of informal disciplinary actions are responsible for following the provisions of this regulation. In all procedures requiring action by the Warden, he/she may act through his/her designee.

*See Change #2 dtd. 7/25/03*

B.    A Supervisor will investigate and make recommendations of sanctions to the Warden or his/her designee for Behavior Citations initiated by DOC employees or their Medical Contract employees.

C.    Sanctions may include, but are not limited to:  loss of any or all privileges (visitation, canteen, telephone, pass, incentive or hobby craft program, etc.), being placed on extra duty, change in job assignment, removal from good time earning status *and* referral  to Classification for custody review ~~and assignment to institutional chain gang for up to fifteen (15) days~~. *See Change*

D.    Any major or minor violation of a certain nature may be adjudicated via a behavioral citation if said violation meets criteria established in AR 403.

## II.  PURPOSE

A.  To correct rule infractions committed by inmates for which formal disciplinary action is not deemed appropriate by the citing employee. Sanctions or punishment resulting from this informal action will not result in forfeiture of earned good time.

B.  To be used to obtain a desirable level of behavior and control of inmates at the lowest level of inmate supervision. Supervisors at all levels will insure that Behavior Citations are constructively used by subordinates.

C.  To reduce the number of lengthy hearings, requiring numerous man-hours, when sanctions imposed do not require a due process hearing.

## III.  PROCEDURES

A.  Any inmate in the custody and control of the Alabama Department of Corrections who commits a violation of institutional or departmental rules, may be issued a Behavior Citation (Annex A) by employees or medical contract employees of the Department of Corrections.

B.  The Citing Employee will inform the inmate that a Behavior Citation is being initiated against him/her and the reason(s) therefor. The Behavior Citation Form should be completed and turned in to the Supervisor before the employee leaves the facility (may hand-write the form if legible). Incident Reports (Form 601) are required on all violations of institutional or departmental rules in accordance with ADOC AR 302.

C.  The employee's Supervisor will conduct an informal investigation surrounding the circumstances of the incident utilizing the Behavior Citation and the Incident Report. He/she will confer with the employee to determine the facts and they may meet with the inmate to present the findings. He/she will then make a recommendation of sanctions, if warranted, to the Warden or his/her designee. The loss of privileges or other sanctions shall not exceed a period of 45 days, however, the sanction recommended should only be severe enough to correct the inmate's behavior. One or more sanctions may be recommended.

D.  The Supervisor will forward the Behavior Citation and Incident Report to the Warden or his/her designee for final action. The Warden/designee will render a final decision as to the sanctions and action to be taken. Sanctions may be modified to insure consistency throughout the institution. The action may also be disapproved totally or disapproved and returned to the citing employee/employee's supervisor to initiate formal disciplinary action in accordance with ADOC AR 403.

E. After the Warden/designee has completed his action, the inmate will be served a completed copy informing him/her of the approved sanctions and the effective date. Inmate will be required to sign for his/her copy or the serving employee will write "Refused to Sign" and give the inmate a copy.

F. Distribution will be made to those offices affected by the sanctions (Business Office, etc.) and to Classification for data entry and to facility and Central Records for filing.

IV. APPEAL BY THE INMATE

The inmate may not appeal the final action by the Warden or his/her designee.

V. REFERENCE

Administrative Regulation 403, "Disciplinary Hearing Procedures for Major Rule Violations"

VI. SUPERSESSION

This regulation supersedes Administrative Regulation 414, dated November 7, 1995.

Joe S. Hopper, Commissioner

ANNEXES

Annex A    Behavior Citation (Major Institutions)
Annex B    Behavior Citation (Work Releases)
Annex C    Violation Table and Punishments
Annex D    Definitions and Examples of Rule Violations

SUMMARY OF CHANGES

Modifies procedures and Annexes A, C and D.

-3-

ALABAMA DEPARTMENT OF CORRECTIONS
MAJOR INSTITUTIONS - BEHAVIOR CITATION

INMATE: _____     AIS: _____     CELL/DORM/BED #: _____

FACILITY: _____     JOB ASGMT: _____     CUSTODY: _____
The above named inmate is cited by _____ for the following
violation(s) of institutional/departmental rule(s) as described:

_____

Date of Infraction: _____     Time of Infraction: _____ (am or pm)
Location of Infraction: _____

_____
                                        Citing Employee's Signature/Date
******************************************************************************
I have investigated the circumstances surrounding this citation and recommend that
the following sanction(s) be taken against this inmate:

( ) Counseling/Warning  ( ) Loss of Telephone Privileges for _____ days
( ) Loss of Canteen Privileges for _____ days  ( ) Removal from Incentive Program
( ) Loss of Visiting Privileges for _____ days  ( ) Removal from Hobby Crafts Prg.
( ) Extra Duty for _____ days at ____ hours per day under supervision of ____ Shift
( ) Removal from good time earning status
( ) Referral to Classification for custody review
(-) Assignment to institutional chain gang for up to fifteen (15) days  ~~See Change~~
                                                                        # 1

_____     _____
Inmate's Signature/AIS/Date          Shift Supervisor's Signature/Title/Date

******************************************************************************
After having reviewed this citation and the recommended sanction(s) presented, the
following action is approved:

( ) Citation and sanctions are approved
( ) Citation and sanctions are approved as modified below:

_____

( ) Citation and sanctions are disapproved and formal disciplinary action is to be
    immediately initiated under the provisions of ADOC AR 403.
( ) Citation and sanctions are disapproved. Expunge action from inmate's file.

_____     _____
Effective Date of Sanctions          Warden/Designee's Signature/Date
******************************************************************************

Inmates receipt of completed action: _____
                                        Inmate's Signature/AIS/Date
Serving Officer's Initials: _____
******************************************************************************
Distribution: ( ) Captain ( ) Shift Cmdr ____ Shift ( ) Business Office ( ) ICS
(As Required) ( ) Psychologist ( ) Classification ( ) Central Records ( ) File

                                        Annex A to AR 414

ALABAMA DEPARTMENT OF CORRECTIONS
WORK RELEASES - BEHAVIOR CITATION

**SECTION I**

INMATE NAME: _____  AIS: _____  BED #: _____

Citing Employee's Name: _____  Title: _____

The above inmate is cited for the following violation(s) of institutional/departmental rule(s) as described below:

Rule(s) Number: _____

_____

**SECTION II**

For this citation, it is recommended that the following action be taken against this inmate:

_____  Counseling/Warning
_____  Loss of TV/Recreation Hall/Games for _____ days
_____  Extra Duty _____ hours for _____ days
_____  Loss of Outside Privileges for _____ days
_____  Loss of Telephone Privileges for _____ days
_____  Loss of Visiting Privileges for _____ days
_____  Restriction/State Whites for _____ days
_____  Loss of Passes for _____ days
_____  Return to Inmate Staff for _____ days/week(s)
_____  Draw cut to $ _____ per week for _____ week(s)
_____  Other _____

_____        _____
Citing Employee's Signature/Date         Shift Supervisor's Signature/Date

_____        _____        _____
Inmate's Signature                       AIS Number              Date

**SECTION III**

_____   I CONCUR with the recommendation(s) stated above.
               I DO NOT CONCUR and recommend the following:

_____

Modification Begins: _____
              Ends: _____

_____
Warden's Signature/Date

Distribution as Applicable
Inmate's File

Annex B to AR 414

## VIOLATION AND TABLE PUNISHMENT

| MINOR RULES VIOLATIONS | VIOLATIONS TYPES |
|---|---|
| | **Violation Against Persons** |
| 43 | Harassment |
| 55, 58, 63 and 65 | **Security Violations** |
| 55 | Unsatisfactory work |
| 58 | Lying or giving false information or testimony to an employee |
| 63 | Disorderly conduct |
| ~~65~~ | ~~Failure to report~~ |
| 74 thru 77 79 thru 85 87 and 89 | **Policy and Procedure Violations** |
| 74 | Gambling |
| 75 | Violation of institutional mail rules |
| 76 | Corresponding with another inmate without permission |
| 77 | Violation of visiting privileges |
| 79 | Unauthorized operation of a vehicle |
| 80 | Unauthorized use of institutional resources |
| 81 | Feigning illness |
| 82 | Marrying without permission |
| 83 | Charging or accepting any compensation for legal assistance |
| 84 | Unauthorized use of telephone |
| 85 | Violation of institutional rules and regulations |
| 87 | Malingering |

Annex C to AR 414 (Page 1 of 2)

| MINOR RULES VIOLATIONS | VIOLATIONS TYPES |
|---|---|
| | Violation of DOC clothing policy |
| 89 | |
| | **Miscellaneous** |
| 95 | |
| (Including Parole Violation-PV) | Possession of any gang paraphernalia, drawings or graffiti to include the utilization of any known gang symbols |
| 95 | |
| | Violation of parole-violation to be determined by Pardons and Paroles Officer/Board |
| PV | |
| | Additional rules applicable to inmates assigned to Work Release and Supervised Intensive Restitution (SIR) Program |
| E1 thru E3 | |
| | Failure to Pay Fees - (Supervision, court costs, restitution, child support, debts incurred, or any other court ordered fees) |
| E1 | |
| | Curfew violations |
| E2 | |
| E3 | Changing sponsor, residence or employment without supervisor's approval |

*[handwritten: 96 Failure To Report See Change #1]*

Annex C to AR 414 (Page 2 of 2)

## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS

### 43 - Violation Against Persons

43    HARASSMENT - To badger, bait, torment, or hound; also to intimidate another by unlawful coercion or duress.

### 55, 58, 63 and 65 - Security Violations

55    UNSATISFACTORY WORK - Assigned work not performed in a satisfactory manner due to carelessness, inattention to detail, or indifference.

58    LYING OR GIVING FALSE INFORMATION OR TESTIMONY TO AN EMPLOYEE - Making statements which are known to be untrue, especially to deceive an employee of the DOC, such as lying to a Hearing Officer.

63    DISORDERLY CONDUCT - Any behavior that is contrary to institutional policy or regulation, and may tend to disturb the security of the institution.

65    FAILURE TO REPORT - Not reporting for appointments or being at a designated place as ordered by any DOC employee. *See Change # 1*

### 74 thru 77, 79 thru 85, 87, 89 and 90 - Policy and Procedure Violations

74    GAMBLING - Conduct in which a person stakes or risks something of value based upon the outcome of a contest of chance, or the possession of equipment or paraphernalia used in said contest, or the operation of such a contest.

75    VIOLATION OF INSTITUTIONAL MAIL RULES - The specific definition of the charge depends upon the mail rules.

76    CORRESPONDING WITH ANOTHER INMATE WITHOUT PERMISSION - Self explanatory

77    VIOLATION OF VISITING PROCEDURES - The specific charge depends upon the visiting procedures at the particular institution at which the violation occurs.

79    UNAUTHORIZED OPERATION OF A VEHICLE - To include the operation of a state vehicle in an unauthorized area.

80    UNAUTHORIZED USE OF INSTITUTIONAL RESOURCES - The use of institutional or departmental supplies, tools, equipment or machinery without permission.

81    FEIGNING ILLNESS - Self explanatory

82    MARRYING WITHOUT PERMISSION - Self explanatory

Annex D to AR 414 (Page 1 of 2)

83   **CHARGING OR ACCEPTING ANY COMPENSATION FOR LEGAL ASSISTANCE OR OTHER SERVICES RENDERED** - Aiding another inmate with administrative matters or other services rendered, such as disciplinaries, classification proceedings, and related appeals for compensation.

84   **UNAUTHORIZED USE OF TELEPHONE** - The specific definition of the charge depends upon the rules governing the use of the telephone.

85   **VIOLATION OF INSTITUTIONAL RULES OR REGULATIONS** - The specific definition of the charge depends upon the nature of the institutional rules or regulation.

87   **MALINGERING** - To pretend to be ill or injured to avoid duty or work.

89   **VIOLATION OF DOC CLOTHING POLICY** - To include unauthorized wearing and possession of jewelry.

**95 (Including Parole Violation - PV) - Miscellaneous**

95   **POSSESSION OF ANY GANG PARAPHERNALIA, DRAWINGS OR GRAFFITI** - Self explanatory

96 - Failure To Report (See Change #1)

PV   **VIOLATION OF PAROLE** - Violation to be determined by Pardons and Paroles Officer/Board

**E1 thru E3     Additional Rules Applicable to Inmates Assigned to Work Release and Supervised Intensive Restitution (SIR) Program** - Self explanatory

**Annex D to AR 414 (Page 2 of 2)**



**STATE OF ALABAMA**

**DEPARTMENT OF CORRECTIONS**

FOB JAMES, JR.
GOVERNOR

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

JOE S. HOPPER
COMMISSIONER

TO:    WARDENS                          CHANGE #1
       HEADS OF STAFF AGENCIES          ADMINISTRATIVE REGULATION #414
       DIVISION HEADS                   December 17, 1996

BEHAVIOR CITATION PROCEDURES
FOR INFORMAL DISCIPLINARY ACTIONS

1.    Purpose/explanation of changes:  To identify and reflect major Rule #65
      (a contraband violation) as minor Rule #96 (a miscellaneous
      violation).  It also incorporates a previous emergency change.

2.    Changes to be made:

      Reference                           Action Required
      Section I/C - Page 1, Line 4        After the word "status" add
                                          "and", and delete remainder of
                                          sentence after the word
                                          "review" on line five.

      Annex A                             In the section stating
                                          "sanction(s) that may be taken
                                          against the inmate" delete "( )
                                          assignment to institutional
                                          chain gang for up to fifteen
                                          [15] days".

      Annex C (Page 1)                    Delete" "Rule #65"

      Annex C (Page 2)                    Add:  Rule #96 - Failure to
      Miscellaneous                       Report

      Annex D (Page 1)                    Delete:  "Rule #65"

Annex D (Page 2)                           Add:
Miscellaneous                              "96.    Failure to Report — Not
                                           reporting for appointments or
                                           being at a designated place as
                                           ordered by any DOC employee."

3.    File this numbered change at the back of the regulation after
      annotating both the index and the regulation, indicating changes have
      been accomplished. Advise all personnel concerned accordingly.

Joe S. Hopper, Commissioner



STATE OF ALABAMA

**DEPARTMENT OF CORRECTIONS**

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

**January 30, 2003**

**ADMINISTRATIVE REGULATION**
**NUMBER                403**

**OPR: INSTITUTIONS**

# DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

## I    GENERAL

A.    This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation.✱All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

✱ see change ✱1

B.    A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.    Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.    When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II    DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III    PROCEDURE BEFORE HEARING

A.    Arrest or Charge of Inmate

*see Charge #1* ✱ The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or charges. The arrest should be made within ten

AR 403 January 30, 2003

(10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.   Appointment of Hearing Officer

*see change #1*

*Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.   Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.   Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.   Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.   Obtain Name of Witnesses Inmate wants at Hearing

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing.

AR 403 January 30, 2003

Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

D.    Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.    Swear the inmate and all witnesses under oath to testify truthfully.

F.    Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.    Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.    Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.    Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.    Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.    Call the inmate into the hearing room and inform him/her of the decisions reached.

L.    If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V    PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

A.    Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.    Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

C.    Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.    Complete, in the appropriate space, specifically the basis for the findings of fact.

E.    Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.    The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.    A completed signed copy of the disciplinary report undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.    If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

1.    At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

a.    One copy to the Board of Pardons and Parole.

b.    One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

c.    Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

d.    One copy retained in the inmate's institutional file.

2.    At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.    Arrest and Hearing Based on Information From Confidential Sources

AR 403 January 30, 2003

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.     The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.     The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.     No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.     Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.     Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.     Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

1.     There is no injury to staff during the incident or as a result of the violation.

2.     No consequences arise which result in the loss or destruction of property and security of the institution.

3.    There is no serious injury to inmates as a result of the violation or incident.

4.    The violator is not likely to receive disciplinary segregation.

5.    With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.    For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.    The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.    Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

## VII    SANCTIONS

A.    Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.    Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.    Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

## VIII    STANDARD OPERATING PROCEDURES

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

AR 403 January 30, 2003

IX    **APPEAL OF THE INMATE**

The inmate may not appeal the final action by the Warden or his/her designee.

X    **REFERENCE**

*Administrative Regulation 414, "Behavior Citation Procedures for Informal Disciplinary Actions"*

XI    **SUPERSESSION**

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.

_____(Original Signed)
Donal Campbell, Commissioner

**ANNEXES**

Annex A - Violations Table and Authorized Sanctions
Annex B - Definitions and Examples of Rule Violations
Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)
Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A

### VIOLATION AGAINST PERSONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSONS NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSON |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

### SECURITY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 45 | ESCAPE BY FORCE |
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |

Annex A to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
|----|----|
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |
| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS. |

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|----|----|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STAYING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

### MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE  (RECOMMENDED BY P&P) |

### WORK RELEASE AND SIR VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPES |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED
## SANCTIONS
### ANNEX A (Continued)

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

## AUTHORIZED SANCTIONS

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

Annex A to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28    HOMICIDE - The death of a human being caused by another person's actions.

29    ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30    ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC - See #29 above.

31    ASSAULT ON ANOTHER INMATE - See #28 or #29 above.

32    SEIZING OR HOLDING HOSTAGES IN ANY MANNER - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33    UNLAWFULLY DETAINING ANY PERSON - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34    FIGHTING WITH A WEAPON - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35    FIGHTING WITHOUT A WEAPON - Similar to #34 above except that a weapon or device used as a weapon are not present.

36    SEXUAL ASSAULT (FORCIBLE) - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37    SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38    INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39    EXTORTION OR BLACKMAIL - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40    ROBBERY - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41    MAKING FALSE STATEMENTS OR CHARGES –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42    GATHERING IN A THREATENING OR INTIMIDATING MANNER - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B (Continued)

44    <u>THREATS</u> - *A communicated intent to do bodily harm to another individual or group by verbal or written expression.*

### SECURITY VIOLATIONS

45    <u>ESCAPE BY FORCE</u> - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46    <u>ATTEMPT TO ESCAPE BY FORCE</u> - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47    <u>ESCAPE WITHOUT FORCE</u> - See #45 above, except that there is no use of constraining power, compulsion, or force involved.

48    <u>ATTEMPT TO ESCAPE (WITHOUT FORCE)</u> - *See #46 above, except that there is no use of constraining power, compulsion, or force involved.*

49    <u>ABSENT WITHOUT LEAVE</u> - Not returning from leave or pass within two hours of the designated time.

50    <u>BEING IN AN UNAUTHORIZED AREA</u> - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51    <u>UNAUTHORIZED POSSESSION OF ESCAPE DEVICE</u> - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52    <u>UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON</u> - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53    <u>INCITING TO RIOT OR RIOTING</u> - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54    <u>REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK</u> - Self-explanatory.

56    <u>FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL</u> - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    <u>INSUBORDINATION</u> - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
### ANNEX B (Continued)

59    DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY - Self-explanatory.

60    BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61    DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscount of inmates within the institution.

62    INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating a situation which could cause serious impairment to the operation of the institution, harm to individuals, or result in destruction of property.

63    DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64    POSSESSION OF CONTRABAND - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65    POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

## PROPERTY VIOLATIONS

68    THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69    DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY - Self-explanatory.

70    UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71    ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72    FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

Annex B to AR 403 (Page 3 of 4)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B (Continued)

73    COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

### POLICY VIOLATIONS

78    FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86    BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

### PERSONAL VIOLATIONS

90    CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

### MISCELLANEOUS VIOLATIONS

91    CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92    AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93    VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94    SOLICITING SEXUAL ACT - Self-explanatory.

PV    VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

### WORK RELEASE AND SIR VIOLATIONS

E8    VIOLATION OF SIR CONTRACT – Self-explanatory

E9    ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003



**STATE OF ALABAMA**

## DEPARTMENT OF CORRECTIONS

Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

July 25, 2003

TO:    WARDENS
       HEADS OF STAFF AGENCIES
       DIVISION HEADS
       ADMINISTRATIVE REGULATION MONITORS

CHANGE #1
ADMINISTRATIVE REGULATION 403

### DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

PURPOSE:    To include contract security employees who will be serving in the same capacities as ALDOC employees.

CHANGES TO BE MADE:

| Reference | Action Required |
|---|---|
| Section IA | Change the second sentence to read:<br>"The Commissioner, or designee(s), Wardens, ALDOC employees and contract employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation." |
| Section IIIA | Change the first sentence to read:<br>"The arrest or charge of an inmate for a rule violation may be made by any employee or contract employee of the ALDOC." |
| Section IIIB | Change the first sentence to read:<br>"Wardens will appoint an ALDOC employee, or contracted employee, to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403." |

Section IVC

Change the fourth sentence to read:
"If the inmate is not capable of acting in his/her own defense, the appoint an on-duty ALDOC employee, or contracted employee, to assist the inmate."

File this numbered change at the back of the regulation after annotating both the index and the regulation to indicate the required changes have been completed. Advise all personnel in your organization of the change to this regulation.

Donal Campbell, Commissioner

EXHIBIT 4

EASTERLING CORRECTIONAL CENTER
200 WALLACE DRIVE
CLIO, AL 36017

CITY OF CLIO
P.O. Box 219
CLIO, AL 36017

PERMIT # 2

# CITY OF CLIO



TOWN HALL
CLIO, ALABAMA

## Annual Drinking Water Quality Report
January—December 2005

We're pleased to present to you this year's Annual Quality Water Report. This report is designed to inform you about the quality water and services we deliver to you every day. Our constant goal is to provide you with a safe and dependable supply of drinking water. We want you to understand the efforts we make to continually improve the water treatment process and protect our water resources. We are committed to ensuring the quality of your water. We utilize two wells and our water resource is groundwater. Well #1 is located on County Road 15 and draws from the Clayton Aquifer. Well # 2 is located on Blue Springs Street with pumping capacity of 850 GPM, and draws water from the Tuscaloosa Aquifer. The water we provide to our customers requires no specialized treatment. However, chlorine is added for disinfection purposes.

The Source Water Protection Plan was completed in 1994. It is available at our office providing more information such as potential sources of contamination. I'm pleased to report that our drinking water is safe and meets federal and state requirements. If you have any questions about this report or concerning your water utility, please contact Terralyn Hague at 334-397-2723. We want our valued customers to be informed about their water supply. If you want to learn more, please attend any of our regularly scheduled meetings, held on the first & third Monday of each month, 6 PM, at the City Hall on 3311 Eastville Street.

COUNCIL
♦Juell Peffer, Mayor      ♦Matthew White
♦Josh Eiler, Pro-Tem      ♦Kenneth Johnson
♦Stephanie Sapp

Tel: 334-397-2723


VIVIAN
City
Clerk


CHRISTI
Clerk


JOHN
Maintenance
Operator


JEREMY
Certified
Operator



## PLAIN LANGUAGE DEFINITIONS

Non-Detects (ND) – laboratory analysis indicates that the constituent is not present.

Not-Regulated (NR) – laboratory analysis not required by the EPA (Environmental Protection Agency for the State of Alabama).

Parts per million (ppm) or Milligrams per liter (mg/l) – one part per million corresponds to one minute in two years or a single penny in $10,000.

Parts per billion (ppb) or Micrograms per liter (ug/l) – one part per billion corresponds to one minute in 2,000 years, or a single penny in $10,000,000.

Parts per trillion (ppt) or Nanograms per liter (nanograms/l) – one part per trillion corresponds to one minute in 2,000,000 years, or a single penny in $10,000,000,000.

Parts per quadrillion (ppq) or Picograms per liter (pg/l) – one part per quadrillion corresponds to one minute in 2,000,000,000 years or one penny in $10,000,000,000,000.

Picocuries per liter (pCi/L) – picocuries per liter is a measure of the radioactivity in water.

Millirems per year (mrem/yr) – measure of radiation absorbed by the body.

Nephelometric Turbidity Unit (NTU) – nephelometric turbidity unit is a measure of the clarity of water. Turbidity in excess of 5 NTU is just noticeable to the average person.

Treatment Technique (TT) – (mandatory language) A treatment technique is a required process intended to reduce the level of a contaminant in drinking water.

Action Level (AL) – the concentration of a contaminant which, if exceeded, triggers treatment or other requirements which a water system must follow.

Maximum Contaminant Level Goal (The "Goal")(MCLG) is the level of a contaminant in drinking water below which there is no known or expected risk to health. MCLGs allow for a margin of safety.

## GENERAL INFORMATION

All drinking water, including bottled water, may reasonably be expected to contain at least small amounts of some contaminants. The presence of contaminants does not necessarily indicate that water poses a health risk. More information about contaminants and potential health effects can be obtained by call the Environmental Protection Agency's Safe Drinking Water Hotline (1-800-426-4791).

The sources of drinking water (both tap water and bottled water) include rivers, lakes, streams, ponds, reservoirs, springs, and wells. As water travels over the surface of the land or through the ground it dissolves naturally-occurring minerals and, in some cases, radioactive material, and can pick up substances resulting from the presence of animals or from human activity.

## Health effects:

Alpha emitters: Certain minerals are radioactive and may emit a form of radiation known as Alpha radiation. Some people who drink water containing Alpha emitters in excess of the MCL over many years may have an increased risk of cancer.

Some people may be more vulnerable to contaminants in drinking water than the general population. Immuno-compromised persons such as cancer patients undergoing chemotherapy, persons who have undergone organ transplants, people with HIV/AIDS or other immune system disorders, some elderly, and infants can be particularly at risk from infections. These people should seek advice about drinking water from their health care providers. EPA/CDC guidelines on appropriate means to lessen the risk of infection by Cryptosporidium and other microbial contaminants are available from the Safe Drinking Water Hotline (1-800-426-4791).

Based on a study conducted by ADEM with the approval of the EPA, a statewide waiver for the monitoring of Asbestos and Dioxin was issued. This monitoring for these contaminants was not required.

MCL's are set at very stringent levels. To understand the possible health effects described for many regulated contaminants, a person would have to drink two liters of water every day at the MCL level for a lifetime to have a one-in-a-million chance of having the described health effect.

We at the City of Clio work around the clock to provide top quality water to every tap. We ask that all our customers help us to protect our water sources, which are the heart of our community, our way of life and our children's future.

JUN 27 2006

# Table of Primary Contaminants

Exhibit 4

At high levels some primary contaminants are known to pose a health risks to humans. This table provides a quick glance of any primary contaminant detections.

| CONTAMINANT | MCL | RANGE DETECTED | CONTAMINANT | MCL | RANGE DETECTED |
|---|---|---|---|---|---|
| **Microbiological** | | | Endothall | 100 | ND |
| Total Coliform Bacteria | < 5% | 0 | Endrin | 2 | ND |
| Turbidity | TT | 0.31 1.05 | Epichlorohydrin | TT | ND |
| **Radiological** | | | Glyphosate | 700 | ND |
| Beta/photon emitters (mrem/yr) | 4 | ND | Heptachlor | 400 | ND |
| Alpha emitters (pci/l) | 15 | 4.12+.57    42+/.2 | Heptachlor epoxide | 200 | ND |
| Radium 228 | 5 | 0.0/-0.4    1.5+/-0.6 | Hexachlorobenzene | 1 | ND |
| Uranium | 30 | ND | Lindane | 200 | ND |
| **Inorganic** | | | Methoxychlor | 40 | ND. |
| Antimony (ppb) | 6 | ND | Oxamyl (Vydate) | 200 | ND |
| Arsenic (ppb) | 10 | ND | PCBs | 500 | ND |
| Asbestos (MFL) | 7 | ND | Pentachlorophenol | 1 | ND |
| Barium (ppm) | 2 | ND | Picloram | 500 | ND |
| Beryllium (ppb) | 4 | ND | Simazine | 4 | ND |
| Cadmium (ppb) | 5 | ND | Toxaphene | 3 | ND |
| Chromium (ppb) | 100 | ND | Benzene | 5 | ND |
| Copper (ppm) | AL=1.3 | ND | Carbon Tetrachloride | 5 | ND |
| Cyanide (ppb) | 200 | ND | Chlorobenzene | 100 | ND |
| Fluoride (ppm) | 4 | 0.71    1.07 | Dibromochloropropane | 200 | ND |
| Lead (ppb) | AL=15 | ND | o-Dichlorobenzene | 600 | ND |
| Mercury (ppb) | 2 | ND | p-Dichlorobenzene | 75 | ND |
| Nitrate (ppm) | 10 | 0.19    0.0.20 | 1,2-Dichloroethane | 5 | ND |
| Nitrite (ppm) | 1 | ND | 1,1-Dichloroethylene | 7 | ND |
| Selenium | 50 | ND | Cis-1,2-Dichloroethylene | 70 | ND |
| Thallium | 2 | ND | trans-1,2-Dichloroethylene | 100 | ND |
| **Organic chemicals** | | | Dichloromethane | 5 | ND |
| 2,4-D | 70 | ND | 1,2-Dichloropropane | 5 | ND |
| 2,4,5-TP (Silvex) | 50 | ND | Ethylbenzene | 700 | ND |
| Acrylamide | TT | ND | Ethylene dibromide | 50 | ND |
| Alachlor | 2 | ND | Styrene | 100 | ND |
| Atrazine | 3 | ND | Tetrachloroethylene | 5 | ND |
| Benzo(a)pyrene(PHAs) | 200 | ND | 1,2,4-Trichlorobenzene | 70 | ND |
| Carbofuran | 40 | ND | 1,1,1-Trichloroethane | 200 | ND |
| Chlordane | 2 | ND | 1,1,2-Trichloroethane | 5 | ND |
| Dalapon | 200 | ND | Trichloroethylene | 5 | ND |
| Di-(2-ethylhexyl)adipate | 400 | ND | TTHM | 80 | ND |
| Di(2-ethylhexyl)phthlates | 6 | ND | Toluene | 1 | ND |
| Dinoseb | 7 | ND | Vinyl Chloride | 2 | ND |
| Diquat | 20 | ND | Xylenes | 10 | ND |
| Dioxin[2,3,7,8-TCDD] | 30 | ND | TOC | TT | ND |
| Chlorimines (MRDLG) | 4 | ND | Chlorine (MRDLG) | 4 | ND |
| Chlorite | 1 | ND | Bromate | 10 | ND |
| Chlorine Dioxide (MRDLG) | 800 | ND | HAA5's | 60 | ND |

## TABLE OF DETECTED CONTAMINANTS

| Contaminant | Violation Y/N | Range Detected | Unit Measurement | MCLG | MCL | Likely Source of Contamination |
|---|---|---|---|---|---|---|
| Turbidity 04 Test Results | NO | 0.31-1.05 | | n/a | TT | Soil runoff |
| Alpha emitters Results 05 | NO | 4.12+.57  42+/.2 | pCi/l | 0 | 15 | Erosion of natural deposits |
| Combined radium ( 2005) | NO | 0.0/-0.41.5+/-0.6 | pCi/l | 0 | 5 | Erosion of natural deposits |
| Fluoride 2004 Test Results | NO | 0.71  1.07 | ppm | 4 | 4 | Erosion of natural deposits; water additive which promotes strong teeth; discharge from fertilizer and aluminum factories |
| Nitrate (as Nitrogen) (Test results 2005) | NO | 0.19  0.0.20 | ppm | 10 | 10 | Runoff from fertilizer use; leaching from septic tanks, sewage; erosion of natural deposits |

## TABLE OF DETECTED SECONDARY CONTAMINANTS (TEST RESULTS 2004)

| Contaminant | MCL | Range of Detects | Contaminant | MCL | Range of Detects |
|---|---|---|---|---|---|
| Aluminum | 0.2 | 0.067-0.204 | Manganese | 0.05 | ND-0.012 |
| Chloride | 250 | 13.0-16.4 | Zinc | 5 | ND-0.061 |
| Color | 15 | 5-10 | Lead | 0.015 | ND-0.044 |
| Copper | 1 | ND-0.054 | Sulfate | 250 | 97.5-129 |
| Iron | 0.3 | ND-0.359 | Total Dissolved Solids | 500 | 168-248 |

## TABLE OF SPECIAL CONTAMINANTS (TEST RESULTS 2004)

| Contaminant | Range of Detects | Contaminant | Range of Detects | Contaminant | Range of Detects | Contaminant | Range of Detects |
|---|---|---|---|---|---|---|---|
| Calcium | 1.6-2.84 | Hardness CaCo3 | 3.01-7.80 | Alkalinity | 163-236 | Specific Conductance | 436-501 |
| Sodium | 97.5-129 | Langelier Index | -0.38 +0.95 | PH | 8.75-9.769.0 | | |

In addition to the primary drinking water contaminants, the utility monitors regularly for the following unregulated and secondary contaminants as regulated by the Alabama Department of Environmental Management. Unregulated contaminants are those for which EPA has not established drinking water standards. The purpose of unregulated contaminant monitoring is to assist EPA in determining the occurrence of unregulated contaminants in drinking water and whether future regulation is warranted.

## TABLE OF UNREGULATED DETECTED CONTAMINANTS

| CONTAMINANT | RANGE OF DETECTS | CONTAMINANT | RANGE OF DETECTS |
|---|---|---|---|
| Bromodichloromethane | 1.60 | Dibromochloromethane | 2.45 |
| Chloroform | 1.26 | Bromoform | 1.35 |